Case 3:23-cv-00190-NJR   Document 19   Filed 07/12/23   Page 1 of 11   Page ID #20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RODNEY BLACK, | |
| Plaintiff, | |
| v. | Case No. 23-cv-190-NJR |
| SAM STOKES, DR. MEYERS, N.P. DEARMOND, AIMEE LANG, C/O DAVIS, WEXFORD HEALTH, JILL CRANE, and GLENN BABICH,[1] | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Rodney Black, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Black alleges Defendants were deliberately indifferent to his medical condition in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

---

[1] Although initially identified as Babbick in the case caption, Black later identified the doctor by his proper name, Dr. Glenn Babich. The Clerk is **DIRECTED** to update the docket to reflect Defendant's proper name.

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Black makes the following allegations: On April 27, 2022, Black had a cystoscopy with prostate and bladder biopsy performed by Dr. Stokes at Chester Memorial Hospital (Doc. 1, p. 16). Prior to the biopsy, Black had no issues urinating on his own (*Id.*). After the appointment, the correctional officers escorting Black received a prescription for Cipro, an antibiotic, and aftercare instructions (*Id.* at p. 8). Upon returning to Menard, Angie Walters failed to provide Black with the instructions (*Id.* at pp. 8, 16). He did not receive the antibiotics until a week later (*Id.* at p. 8). When Black got back to his cell, he began urinating blood clots and lubricant (*Id.*). He informed officers that he could not urinate and was taken back to the healthcare unit. Nurse Brandi D. noted that his stomach was distended, and he had an unusual amount of blood clots (*Id.*). The next day, April 28, 2022, he was taken back to the healthcare unit because his bladder was distended, and he could not urinate (*Id.* at p. 9). He was instructed to keep the catheter in place, although Nurses Susan K. and Brandi Tripp failed to instruct Black on how to clean or replace the catheter (*Id.*).

Since his cystoscopy, Black has suffered from issues with his catheter. It has been taken out and put back in on numerous occasions, resulting in multiple infections, scarring, and trauma. He believes that he needs another cystoscopy to determine the location of the obstruction but, instead, he remains catheterized.

On May 6, 2022, Nurse Practitioner ("N.P.") Dearmond took the catheter out, but the next day Angie Walters put the catheter back in because Black could not urinate (*Id.* at p. 10). On June 1, 2022, he had the catheter taken out by Dr. Stokes's assistant at Chester Memorial Hospital and was able to urinate 12:30 p.m. prior to leaving the hospital. But upon returning to Menard, Black was again unable to urinate and informed Correctional Officer ("C/O") Davis at 5:30 p.m. and was seen by the nurse at 9:08 p.m. on the med line (*Id.* at p. 11). The nurse refused to call Dr. Meyers, but at 12:30 a.m. she placed a catheter in Black (*Id.* at p. 11). On July 19, 2022, the catheter came out while Black was on the yard and C/O Davis told him submit a nurse sick call slip (*Id.*). Black alleges that C/O Davis never notified the healthcare unit of his medical emergency (*Id.* at p. 17). Black was not seen by a nurse until the following day at 2:00 p.m. by Aimee Lang, who refused to replace his catheter (*Id.*). On July 21, 2022, his catheter was replaced by Brandi Tripp (*Id.* at p. 12).

On August 10, 2022, N.P. Dearmond diagnosed Black with a staph infection and prescribed antibiotics (*Id.* at p. 12). On August 16, 2022, Aimee Lang informed Black that Dearmond canceled the prescription (*Id.*). Black alleges that he has developed numerous staph infections because of his catheter. He alleges that the catheter is not replaced as often as needed. On September 16, 2022, he went for a catheter change and Aimee Lang told him that there were no catheters at the healthcare unit, and the catheter was not changed until September 18, 2023. As a result, Black had the same catheter in place for 43 days (*Id.* at p. 13). Black alleges that the catheter and bag is supposed to be changed

every seven days according to the manufacturer but his gets changed every 30 days at the earliest (*Id.* at p. 15).

Although he was scheduled to see Dr. Stokes in September 2022, the appointment was canceled by Dr. Stokes and rescheduled. Subsequent appointments in October and January were canceled and rescheduled (*Id.* at p. 13). At follow-up appointments in August and June, Black saw Dr. Stokes's physician assistants ("PA"), but not Dr. Stokes himself (*Id.* at p. 19). In October 2022, Black believed he was developing a urinary tract infection ("UTI") and asked for labs, but Aimee Lang told him labs would be conducted at his urology appointment the following week. The urology appointment was canceled. Another nurse practitioner ordered labs and he received antibiotics, although Black contends the entire process took 20 days to be diagnosed and receive medication (*Id.* at p. 14).

## **Preliminary Dismissals**

In order to state a claim under Section 1983, Black must establish that a person acting under color of state law violated his constitutional rights. *West v. Atkins*, 487 U.S. 42, 49 (1988). Black cannot proceed against non-state actors under Section 1983. Thus, when a defendant "is not a government official or employee, the plaintiff must show that the private entity acted under the color of state law." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). Whether a private physician is a "state actor" is an important factor in determining whether a plaintiff can proceed against the physician under Section 1983. *See Wainwright v. Trost*, Case No. 17-cv-1055-SMY, 2017 WL 5973026, at *3 (S.D. Ill. Dec. 1, 2017) (citing *Rodriguez*, 577 F.3d at 822-30). Incidental and transitory

interactions are not enough. Further, a contractual relationship, although not dispositive of the issue, is an important factor. *Rodriguez*, 577 F.3d at 827. Black alleges that Dr. Stokes was not a state employee, and was a private citizen employed at Southern Illinois Healthcare in Carbondale, Illinois (Doc. 1, p. 22). There is no indication what relationship there was between the state, Dr. Stokes, and Black. *Rodriguez*, 577 F.3d at 825 ("focus must be on the particular *function* of the medical care provider in the fulfillment of the state's obligation to provide health care to incarcerated persons"). Black fails to offer any allegations which suggest that Dr. Stokes was acting under the color of state law. Further, there are no allegations in the Complaint to suggest that Dr. Stokes acted with deliberate indifference, even if he was a state actor. Black merely alleges that he saw Dr. Stokes's assistants on follow-up appointments and that Dr. Stokes canceled and rescheduled appointments. But these allegations do not suggest deliberate indifference on Dr. Stokes's part. Thus, Dr. Stokes is **DISMISSED without prejudice**.

Black also identifies a number of individuals who are not identified as defendants in the case caption or anywhere else in the Complaint (Doc. 1, p. 23). Thus, any potential claims against Kimberly Martin, C/O Baker, C/O Frietze, Angie Walters, C/O Bowman, Brandi D., Susan K., Brandi Tripp, Angela Crain, and Muldenhauer are **DISMISSED without prejudice**.

Black also fails to state a claim against Dr. Glenn Babich, C/O Davis, and Jill Crane. Black fails to include any allegations against Jill Crane or Dr. Glenn Babich in his statement of facts (Doc. 1, pp. 7-20). Under a section marked "legal claims" he alleges that Jill Crane masqueraded as a nurse practitioner when she was a registered nurse. He

5

alleges that she was his primary medical liaison in May 2022 and did not fight enough to get him back to the hospital. But other than stating she was his "liaison" in May 2022, he fails to allege when he saw her and what care she provided him. Similarly, Black fails to allege when he saw Dr. Babich or how he acted with deliberate indifference. He merely states that he saw Dr. Babich on the computer and that Dr. Babich stated he would intervene in his care but allegedly failed to do so (*Id*. at p. 27). There are simply not enough facts to state a claim against either Jill Crane or Dr. Babich.

As to C/O Davis, Black merely alleges that when he reported his catheter fell out on July 19, 2022, Davis instructed him to submit a nurse sick call which Black acknowledges he submitted. Nothing in the allegations suggests that Davis's actions amounted to deliberate indifference, nor is there any indication that the short delay exacerbated his injury. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (Delay in care can amount to deliberate indifference if the delay "exacerbated the injury or unnecessarily prolonged an inmate's pain.") (internal citations and quotations omitted). Similarly, Black points to an earlier interaction with Davis where he informed Davis of his need for care and saw medical staff a short time later. Nothing in the allegations suggest the short delay amounted to deliberate indifference. Thus, Davis is also **DISMISSED without prejudice**

Black also fails to state a claim against Wexford Health. In order to state a claim against Wexford, Black must point to an "(1) an express [corporate] policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority" who caused the deprivation.

*Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). Black alleges that Wexford failed to send him to a different urologist, failed to provide an on-site physician, and hired incompetent staff (Doc. 1, p. 29). Black alleges he had problems with Wexford's collegial review process because the officials who issued writs were not "on the same page" with the collegial review officials (*Id*. at p. 27). But Black fails to tie any of these issues to a policy or widespread practice attributable to Wexford. Accordingly, Wexford Health is also **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following count:

> **Count 1:** Eighth Amendment deliberate indifference claim against N.P. Dearmond, Aimee Lang, and Dr. Meyers for denying and delaying care for Black's urinary retention and resulting infections.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

At this stage, Black states a viable claim against N.P. Dearmond, Aimee Lang, and Dr. Meyers for the care that they provided to him. Black alleges that Dr. Meyers was

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

consulted over the phone for Black's care because Menard lacks an onsite doctor. Despite having complaints of urinary retention, Dr. Meyers merely ordered that Black's catheter be replaced rather than seeking the cause of his bladder issues. As a result, Black continued to have issues with urinary retention and the placement of the catheter resulted in scarring and numerous infections.

Black also states a claim against Aimee Lang. Black alleges that he had to write several sick call slips before Lang would refer to him to Dearmond for his infections (Doc. 1, p. 26). She also refused to put his catheter back in place after it fell out (*Id*. at pp. 9, 12, 17, 27). Lang also delayed changing his catheter and refused to order labs (*Id*. at p. 13, 14). Black alleges these delays often led to an infection and delays in receiving treatment (*Id*. at p. 14).

As to N.P. Dearmond, Black alleges that she initially prescribed antibiotics for a staph infection in August 2022 but later canceled the medication (Doc. 1, p. 12). There were also delays in obtaining labs, getting the results, and receiving antibiotics, which Black attributes to Dearmond (*Id*. at p. 26). She further did not change the catheter in the required time, allowing Black to go well over thirty days before receiving a new catheter (*Id*. at p. 29). The delays changing the catheter, obtaining lab results when he had issues, and obtaining antibiotics left Black with staph infections. At this stage, these allegations state a claim against Dearmond. Black also alleges that Dearmond often contradicted her own recommendations, telling Black that he would have to remain in the healthcare unit until he urinated but then sending him back to the cellhouse without urinating. She also directed Black to clamp his catheter to train his bladder (*Id*. at p. 25). But these allegations

do not amount to deliberate indifference, and there is no indication that these actions caused a delay in Black's treatment. Thus, the claim against Dearmond is limited to her canceling Black's antibiotics, delaying labs and antibiotics, and delaying catheter changes.

## Pending Motions

In addition to his Complaint, Black recently filed a motion for preliminary injunction (Doc. 18). Black argues that he needs to receive a cystoscopy, preferably not from Dr. Stokes, in order to determine the cause of his urinary retention and to stop the cycle of UTIs caused by his use of a catheter. In order to obtain a preliminary injunction, a plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). Black fails to meet his burden. Other than stating that he believes his civil rights are being violated and that he has a serious medical issue, Black's motion fails to offer any allegations about the current status of his condition, whether he currently has an infection, and the treatment he is currently receiving from the defendants. Thus, his motion for preliminary injunction is **DENIED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Dr. Meyers, N.P. Dearmond, and Aimee Lang. All other claims and defendants are **DISMISSED without prejudice.**

The Clerk of Court shall prepare for Defendants Dr. Meyers, N.P. Dearmond, and Aimee Lang: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Black. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Black, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Black, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless

of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Black is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: July 12, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**